UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:17-cr-40056-SLD-2 |
| BRIANNA BETH SULLIVAN, | ) |
| Defendant. | ) |

ORDER

Before the Court are Defendant Brianna Beth Sullivan's pro se motion for compassionate release, ECF No. 71, counseled Amended Motion for Compassionate Release, ECF No. 75, Motion for Leave to File Exhibit #4 Under Seal, ECF No. 76, and Motion for Leave to File Reply, ECF No. 82, and the United States' Motion to File Exhibit Under Seal, ECF No. 78. For the reasons that follow, the motions for compassionate release are DENIED, the motions for leave to file under seal are GRANTED, and the motion for leave to file a reply is GRANTED.

BACKGROUND

On September 23, 2019, Defendant was sentenced to ninety-six months of imprisonment for conspiracy to distribute at least fifty grams of actual methamphetamine. Judgment 1–2, ECF No. 68. She is currently serving her sentence at Federal Correctional Institution ("FCI") Pekin in Pekin, Illinois and is scheduled to be released April 2, 2024. *See Find an Inmate*, Fed. Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (search for "Brianna" with "Beth" with "Sullivan") (last visited July 6, 2021). In light of the ongoing COVID-19 pandemic, Defendant filed a pro se motion for an order reducing her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court appointed the Federal Public Defender to represent Defendant with respect to this motion. *See* Feb. 9, 2021 Text Order. An amended motion was filed by counsel on March 24,

1

2021. The United States opposes Defendant's request for compassionate release. Resp., ECF No. 79. Defendant moves for leave to file a reply, which the Court GRANTS.

## DISCUSSION

### I. Legal Standard

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances. 18 U.S.C. § 3582(b). As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). "[T]he movant bears the burden of establishing extraordinary and compelling reasons that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021) (quotation marks omitted).

### II. Analysis

Defendant argues that her serious and chronic medical conditions (severe obesity, amongst others), her children's need for her presence in their lives, and the COVID-19 pandemic together constitute an extraordinary and compelling reason for release. Am. Mot. Compassionate Release 6–11. She acknowledges that she previously contracted COVID-19 but argues her previous infection "provides her little or no assurance that she is not at risk of re-infection of the deadly disease." *Id.* at 7–8. She further acknowledges in her reply that she has been vaccinated against COVID-19 but argues that because "[i]t is . . . not known how effective

2

the vaccine will be in preventing [her] from experiencing severe illness or death from COVID-19 due to her individual characteristics" and because "it is not generally known what the real world effectiveness of these vaccines will be," her vaccination status does not undermine her claim of extraordinary and compelling circumstances. *See* Reply 1–2, ECF No. 82-1. The United States argues that Defendant's motion should be denied because "[her] prior COVID infection, her subsequent COVID vaccination, and the [BOP's] increasing COVID precautions sufficiently mitigate [her] risk, if any, of a severe reaction to a COVID-19 reinfection"; because her children's caregivers are not incapacitated; and because her release would be inappropriate in light of the § 3553(a) factors. Resp. 1.[1]

The compassionate release statute directs the Court to determine: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission"; and 3) whether a reduction would be consistent with the factors listed in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The Seventh Circuit has held, however, that there is currently no applicable policy statement with which a sentence reduction under the compassionate release statute must be consistent. *See United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020).

This Court has found extraordinary and compelling circumstances exist due to the COVID-19 pandemic when an individual is at higher risk for severe illness if she contracts COVID-19. *See United States v. Smith*, Case No. 2:17-cr-20056-SLD-EIL, 2021 WL 262553, at *2 (C.D. Ill. Jan. 26, 2021). And here, Defendant has at least one

---

[1] The United States does not argue that Defendant failed to exhaust her administrative remedies, so the Court need not address the exhaustion requirement. *Cf. United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it." (citations omitted)).

3

condition—obesity—which the Centers for Disease Control and Prevention ("CDC") states may increase her risk for severe illness from COVID-19. *See People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021).

But she has received both doses of a COVID-19 vaccine. And the information available to the Court suggests that being fully vaccinated significantly reduces an individual's risk of getting seriously ill from COVID-19. For example, the CDC states that "[s]tudies show that COVID-19 vaccines are effective at keeping [individuals] from getting COVID-19" and that "[g]etting a COVID-19 vaccine will also help keep [individuals] from getting seriously ill even if [they] do get COVID-19." *Key Things to Know About COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (last updated June 25, 2021); *COVID-19 Vaccines Work*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last updated May 20, 2021) ("Vaccine effectiveness studies provide a growing body of evidence that mRNA COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings, reducing the risk of COVID-19, including severe illness, among people who are fully vaccinated by 90 percent or more."). The CDC also states that "there is increasing evidence that COVID-19 vaccines also provide protection against . . . asymptomatic infections[]." *COVID-19 Vaccines Work*, *supra*.

Moreover, the BOP reports that there are currently no confirmed cases of COVID-19 amongst inmates at FCI Pekin and nine confirmed cases in staff members. *See COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (scroll to

"COVID-19 Cases" and click on "Full breakdown and additional details") (last visited July 6, 2021). And it reports that 553 inmates at FCI Pekin have been fully vaccinated. *See id.* (scroll to "COVID-19 Vaccine Implementation" and click on "Learn more about vaccinations and view individual facility stats") (last visited July 6, 2021). There are 1,192 total inmates at the Pekin correctional complex. *FCI Pekin*, BOP, https://www.bop.gov/locations/institutions/pek/ (last visited July 6, 2021). Therefore, approximately half of Pekin's inmates have been vaccinated.

In light of her vaccination, the Court finds that Defendant has not shown an extraordinary and compelling reason for release based on the COVID-19 pandemic. Many courts have come to similar conclusions. *See, e.g.*, *United States v. Singh*, --- F. Supp. 3d ----, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) ("[T]he Court concludes that Singh's recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with Singh's underlying conditions [that increase his risk for serious illness from COVID-19], no longer presents an extraordinary and compelling reason to grant compassionate release."); *United States v. Brown*, 3:12-cr-207-MOC, 2021 WL 2518220, at *3 (W.D.N.C. June 18, 2021) ("Because vaccination mitigates the risk of contracting COVID-19, Defendant cannot establish an 'extraordinary and compelling' reason for compassionate release based on his concern about contracting the virus [notwithstanding that he has medical conditions which put him at higher risk for severe illness from COVID-19]."); *United States v. Schoonover*, Nos. 1:01-cr-00156-JMS-TAB-01, 1:02-cr-00014-JMS-MJD-02, 2021 WL 1814990, at *4 (S.D. Ind. May 6, 2021) ("Although no vaccine is perfect, the CDC has recognized that [the COVID-19] vaccines . . . are effective . . . . In these circumstances,

the Court declines to exercise its discretion to find that the risk Mr. Schoonover faces from the COVID-pandemic represents an extraordinary and compelling reason warranting a sentence reduction." (citation omitted)).

Defendant also argues that her family circumstances—specifically, her "need to be a mother to her minor children," Reply 13—constitute an extraordinary and compelling reason for release. *See* Am. Mot. Compassionate Release 10. Defendant's mother explains in a letter to the Court that she is caring for Defendant's three-year-old son, which is difficult for her financially, logistically, and emotionally. *See* Sullivan Letter, Am. Mot. Compassionate Release Ex. 2 at 1–2, ECF No. 75-2. She explains that Defendant's minor daughter essentially lived with her prior to September 2020 but that when Defendant's older daughter—who helped care for the children—moved away, "it was not going to be feasible for [the minor daughter] to continue to be with" the grandmother. *Id.* The daughter then moved in with her father's aunt and grandmother; she could not live with her father because he was doing drugs. *Id.* In her reply, Defendant represents that the minor children's father "has relapsed in his drug use and is now completely absent from their lives." Reply 13.

Defendant argues these circumstances are "comparable to" the criteria set out in the commentary to United States Sentencing Guideline § 1B1.13. *See* Am. Mot. Compassionate Release 10 (citing U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(C) (U.S. Sentencing Comm'n 2018)). Comment C to § 1B1.13 provides that "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" and "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"

constitute extraordinary and compelling reasons for release. The United States argues the Court should not "adopt[] the . . . position that the financial and time management stresses of caring for young children are the constructive equivalent of the death or incapacitation of a caregiver" and, therefore, extraordinary and compelling reasons for release. Resp. 18–19 (quotation marks omitted) (citing district courts cases that have required a defendant to show the absence of a caregiver to establish extraordinary and compelling circumstances related to caring for minor children). Defendant points out that the Court is no longer bound by § 1B1.13 and its commentary and argues the Court can find a broader range of extraordinary and compelling reasons for release, Reply 11–14, implying the Court need not find a "constructive equivalent" of the specific circumstances listed in the commentary to § 1B1.13.

The Seventh Circuit has not made clear how closely the Court must hew to § 1B1.13. In *Gunn*, 980 F.3d at 1181, the Seventh Circuit held that "[d]istrict judges must operate under the statutory criteria—'extraordinary and compelling reasons'— subject to deferential appellate review." But the court also noted that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons,'" and "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* at 1180.

In any case, though the Court recognizes that Defendant's family is enduring hardships, it finds her family circumstances do not constitute an extraordinary and compelling reason for release (either alone or in combination with the COVID-19 pandemic). Many prisoners have minor children, and certainly most prisoners' families

7

suffer hardships due to the prisoners' incarceration. Here, both children have caregivers, and Defendant provides nothing that convinces the Court that her family's circumstances are so extraordinary and compelling that her release from prison is justified.

## CONCLUSION

Accordingly, Defendant Brianna Beth Sullivan's pro se motion for compassionate release, ECF No. 71, and counseled Amended Motion for Compassionate Release, ECF No. 75, are DENIED. The Motion for Leave to File Exhibit #4 Under Seal, ECF No. 76, and Motion to File Exhibit Under Seal, ECF No. 78, are GRANTED because Defendant's personal records should remain sealed. The Motion for Leave to File Reply, ECF No. 82, is GRANTED. The Clerk is directed to file the reply, ECF No. 82-1, on the docket.

Entered this 6th day of July, 2021.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE